UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                              Case No.: 06-48060

TAMPA ASSOCIATES LIMITED PARTNERSHIP,               Chapter 11

      Debtor.                                       Honorable Walter Shapero

_____/

## OPINION DENYING APPLICATION TO APPOINT
## COLLIERS INTERNATIONAL AS BROKER

This Court has recently authorized the sale of part of the property in Novi, Michigan, owned by Debtor Tampa Associates Limited Partnership ("Tampa") with the proceeds of the sale to be held in escrow pending a later determination of entitlement thereto.

Tampa has now filed an application to retain "Colliers International[1]" as a real estate broker for Tampa, "consistent with the Amended and Restated Listing Agreement," attached to the application, to which Target Corporation has objected. It is Tampa's intention, if the application is granted, to pay Colliers International the percentage commission provided for in some agreement (which appears to be either 5% or 6% depending on whether or not there is a co-broker) at the closing of the authorized sale out of the proceeds of that sale. There is no mention in the application of a co-broker, and if so who it might be and whether or not there will be any payment of such entity of the commission, and if so how much etc. The agreement forming the basis for the application would appear to also cover any future sales or leases of Debtor's property coming within its terms.

There are two documents attached to the application:

---

[1] (Neither the motion nor the disinterestedness affidavit indicate or identify the form or nature of the entity using that name.)

1

The first document is on Insite Commercial Group letterhead, dated September 23, 2004, entitled "Amendment to Listing Agreement," reciting as its signatories and parties, Landon Development Corporation and Insite Commercial Group, LLC. It says it is an amendment to the Exclusive Listing Agreement (Listing) dated August 21, 2003, between Landon Development Corporation (though the amendment is not signed by the latter) and Insite Commercial Group, LLC. The purport of this document is to extend the referred to listing agreement for an additional six months through March 30, 2005. The referred to listing agreement dated August 21, 2003, is not attached to the application.

The second document is entitled "Amended and Restate Listing Agreement," entered and made effective October 13, 2004, between Landon Development Group, LLC (not Landon Development Corporation which was the stated party to the first document) and Insite Commercial Group, a Michigan corporation (not Insite Commercial Group, LLC which was the stated party to the first document). This document refers to yet another document entitled "Listing Agreement," dated August 7, 2003, (and referred to as the "Original Agreement"). That Original Agreement is not attached to the application. Nor does the application facially connect up either Insite Commercial Group LLC or Insite Commercial Group, a Michigan Corporation) with the broker sought to be retained - Colliers International - though there has been some indication in connection with the sale motion hearings that Colliers might have become in some, as yet unspecified way, a successor to, or assignee of some Insite entity.

It also appears that the property to be sold in reference to which the initial commission is intended to be paid, belongs to Tampa which sometime, as the Court recalls, became the name, by name change of Landon Development Corporation (not Landon Development Group LLC) which

2

owned the involved property. Whichever are the agreements (and assuming they were all properly signed) governing and supporting the application it would appear in any event they were all signed prior to Debtor's bankruptcy filing in June 2006. That means that they were pre-petition executory contracts. Furthermore, the first document indicates the term of the agreement expired March 30, 2005, and the second document provision dealing with the subject of its term states that it was "for six months from the Effective Date of this Listing Agreement, enabling the Broker to market the Property until April 30, 2005." There are no presented documents which would authoritatively and without discrepancy indicate the term of whichever agreement is applicable, was extended to some appropriate date which would permit its or their assumption, for instance.

Under applicable bankruptcy law, generally if a debtor wishes to assume a pre-petition executory contract, it can seek to do so, but if it does it must follow the appropriate rules, the substantive ones are in section 365 of the Code and the procedural ones in F.R.Bankr.P. 6006. Applying for the broker's appointment in the manner attempted here is neither a compliance with such nor a permitted way of avoiding having to do so. Furthermore, even if Tampa did decide to follow more proper procedure, the very recitation of the presented and unpresented, but referred to agreements, and the recitations and identifications of the indicated parties thereto, and their relationship (or lack thereof) to each other and to the bankruptcy debtors involved, and the problem of the apparent expirations of the terms thereof, individually and in sum present very serious, though maybe not insurmountable, problems. Those problems might not be the only issues arising in an assumption proceeding, but they surely present a bar granting to the application as filed keeping particularly in mind that this application appears to relate not only to the indicated pending sale but potential future transactions as well - making the indicated infirmities more serious and in greater

need of correction, if it is possible to do so. The Court will not speculate about the existence, nature or possibility of mistakes in names or scrivener's errors and the like if such were to be offered as some explanation of the recited inconsistent and ambiguous documents. In matters such as are involved here, what this Court sees from primarily the documents presented to it forms the basis for what the parties will get. Nor can, nor should, the Court willy nilly and without substantial proof and reason requiring it to do so, ignore the apparent existence of separate, though possibly related entities. Accordingly the application is denied, without prejudice.

**Signed on January 26, 2007**

                                        **/s/ Walter Shapero**
                              **Walter Shapero**
                              **United States Bankruptcy Judge**